ORIGINAL

CLERK U.S. DISTRICT COURT
NORTHERN DIST. OF TX
FORT WORTH DIVISION
FILED

2019 SEP 27  PM 4: 14

DEPUTY CLERK_____

# IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF TEXAS
## FORT WORTH DIVISION

| | | |
|---|---|---|
| DIAMONDBACK INDUSTRIES , INC., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CASE NO. 4:18-cv-902-A |
| | § | |
| KINGDOM DOWNHOLE TOOLS, LLC, | § | |
| TREA H. BAKER; and JUSTICE | § | |
| BAKER | § | |
| | § | |
| Defendants. | § | |

## RESPONSE TO DEFENDANTS' PARTIAL MOTION TO DISMISS PLAINTIFF'S
## FIRST AMENDED COMPLAINT

<u>**TABLE OF CONTENTS**</u>

I.      INTRODUCTION AND SUMMARY OF ARGUMENT ...................................................1

II.     BACKGROUND ...................................................................................................................2
        A.      Factual Background .................................................................................................2
        B.      Procedural History ...................................................................................................5
                1.      Fort Worth Suit ...............................................................................................5
                2.      Waco Suit .........................................................................................................5
III.    DIAMONDBACK'S DMCA CLAIM CANNOT BE DISMISSED...................................7

        A.      Applicable Law .........................................................................................................8
                1.      12(b)(6) ............................................................................................................8
                2.      17 U.S.C. § 101, *et seq.* ...............................................................................8

        B.      Argument: the DMCA claim is proper because no copyright registration is required.
                ...................................................................................................................................10
IV.     DIAMONDBACK'S PATENT INFRINGEMENT CLAIM SHOULD NOT BE
        DISMISSED ........................................................................................................................13

        A.      Applicable Law .......................................................................................................13
                1.      Fed. R. Civ. P. 12(b)(7) and 19(a)(1)(B)(ii).................................................13
                2.      Patent ownership and the "all substantial rights" doctrine ............................14
                3.      "exclusive licensee" .......................................................................................15

        B.      Argument Kingdom has failed to meet its initial burden to show that RP is a
                required party...........................................................................................................16
                1.      Kingdom has not demonstrated that RP's absence creates a "substantial risk"
                        ......................................................................................................................16
                2.      As the sole owner of the '035 Patent, Diamondback may sue in its own name
                        ......................................................................................................................17
                3.      RP is not an "exclusive licensee" in the sense of total exclusion ...................18

V.      CONCLUSION....................................................................................................................19

## TABLE OF AUTHORITIES

**Cases**

*Alfred E. Mann Found. for Sci. Research v. Cochlear Corp.*, 604 F.3d 1354 (Fed. Cir. 2010)...15, 18

*AsymmetRx, Inc. v. Biocare Med., LLC*, 582 F.3d 1314 (Fed. Cir. 2009).....................................14

*I.M.S. Inquiry Mgmt. Sys., Ltd. v. Berkshire Info. Sys., Inc.*, 307 F. Supp. 2d 521 (S.D.N.Y. 2004) ..........................................................................................................................................12

*Inspirus, L.L.C. v. Egan*, No. 4:11-CV-417-A, 2011 U.S. Dist. LEXIS 146054 ....................14, 16

*Lone Star Silicon Innovations LLC v. Nanya Tech. Corp.*, 925 F.3d 1225, 1238 (Fed. Cir. 2019) ..........................................................................................................................................17

*Med. Broadcasting Co. v. Flaiz*, No. Civ.A. 02-8554, 2003 U.S. Dist. LEXIS 22184, 2003 WL 22838094 ..................................................................................................................................11

*Mentor H/S, Inc. v. Medical Device Alliance, Inc.*, 240 F.3d 1016 (Fed. Cir. 2001) ....................15

*New World Int'l, Inc. v. Ford Glob. Techs., LLC*, No. 3:16-CV-1112-M, 2017 U.S. Dist. LEXIS 41067 ......................................................................................................................................18

*Playboy Enters. Int'l Inc. v. Mediatakeout.com LLC*, 2016 WL 102331 ...............................11, 12

*See Gattoni v. Tibi_LLC*, 254 F. Supp. 3d 659, 663-64 (S.D.N.Y. 2017)......................................12

*Sw. Bell Tel., L.P. v. Arthur Collins, Inc.*, No. 3:04-CV-0669-B, 2005 U.S. Dist. LEXIS 46874, 2005 WL 6225305 ......................................................................................................................7

*Thron v. HarperCollins Publishers, Inc.*, No. 01 Civ. 5437 (JSR), 2002 U.S. Dist. LEXIS 13670, 2002 WL 1733640 ....................................................................................................................11

*Waterman v. MacKenzie*, 138 U.S. 252 (1891) ...........................................................................15

**Statutes**

17 U.S.C. § 102..............................................................................................................8, 10

17 U.S.C. § 102(a) ...........................................................................................................8, 11

17 U.S.C. § 102(a)(5) .............................................................................................................8

17 U.S.C. § 106................................................................................................................8, 10

**Federal Rules of Civil Procedure**

Fed. R. Civ. P. Rule 19(b) ......................................................................................................14

Fed. R. Civ. 15(a)(2)...............................................................................................................19

Fed. R. Civ. P.  19(a)(1)......................................................................................................13, 14

Fed. R. Civ. P. Rule 12(b)(7).....................................................................................................13

**TO THE HONORABLE UNITED STATES DISTRICT JUDGE:**

Diamondback Industries, Inc. (sometimes referred to as "Diamondback," "Plaintiff," "Licensor," or "Patent Owner") hereby responds to the Partial Motion to Dismiss Diamondback's First Amended Complaint ("Motion"), which was filed by Kingdom Downhole Tools, LLC, Trea H. Baker, and Justice Baker (sometimes referred to, collectively, as "Kingdom" or "Defendants"). For the reasons below, the Motion should be denied.

## I.    INTRODUCTION AND SUMMARY OF ARGUMENT

Regarding Diamondback's DMCA claim, Defendants' sole argument rests on the lack of a copyright registration.  However, there is neither a statutory requirement for registration prior to bringing a DMCA claim, nor have courts required registration.  The Copyright Act (17 U.S.C. § 101, *et seq.*") provides that the establishment of the exclusive right of a copyright exists separate and apart from a copyright owner's right to enforce the copyright in an infringement action. Additionally, a copyright owner need not register a copyright for infringement to exist, and the DMCA makes no reference to "actionable" infringement or "infringement of a registered copyright."  Finally, district courts addressing the issue of whether registration is required for a DMCA action have uniformly held that registration is *not* required.

With respect to Diamondback's patent infringement claim and the Patent License between Diamondback and Repeat Precision ("RP" or "Licensee"), Kingdom ignores the most important language in the Patent License. In Section 6.2, Diamondback expressly retained the right to sue third party infringers: "Licensor may, at its sole option, choose to bring suit to stop infringement of the Licensed Patent ...." When, as here, Diamondback invokes its right to bring such a suit, it "may control the conduct of the prosecution ... of [the] proceeding ... , including settlement ...."

Kingdom also mischaracterizes the scope of the license grant and suggests that Diamondback gave away the right to practice its own inventions. Diamondback did no such thing. To the contrary, RP's rights to be the exclusive party allowed to make or sell the patented setting tools are limited to being the only party with a license from the patent owner to sell such tools and whose sales of such setting tools would, in the absence of such a license, "infringe" the '035 Patent. In that regard, RP is only an "exclusive licensee" in the sense that it is the sole licensee. RP is not an "exclusive licensee" in the comprehensive sense that it can exclude any and all parties, including the patent owner. Starting long before the Patent License was executed, and continuing to this day, Diamondback has been lawfully selling patented setting tools pursuant to its right and authority to do so as the patent owner. As the patent owner, Diamondback has never needed a license to sell its patented tools. And as a major player in the disposable setting tool market, Diamondback has a vested interest in policing the setting tool marketplace.

Having retained "substantial rights" in and to the patent, Diamondback has the right to sue in its own name and need not join any other party to do so. Diamondback has taken prompt and assertive action to protect its own rights—actions that also protect the rights of its licensee, RP. In so doing, Diamondback has eliminated any risk that RP would file its own suit or would otherwise cause Kingdom to "incur[] double, multiple, or otherwise inconsistent obligations because of [RP's] interest."

## II.   BACKGROUND

### A.   Factual Background

Diamondback has set forth most of the relevant background facts in its First Amended Complaint. *See* Dkt. 65 at ¶¶ 11-36, incorporated here by reference. The following additional facts are relevant here.

After performing the necessary due diligence and analysis regarding Kingdom's tool, and prior to filing its patent infringement claim against Kingdom, Diamondback, through its counsel, provided prompt written notice to RP's counsel regarding Diamondback's belief that Kingdom is infringing. Cammack Dec., Pf's Appx. 1-4. Since that time, RP has not: responded or objected; suggested that Diamondback had no right to initiate such litigation; asked to participate in the litigation; or insisted that it should be joined as a necessary party. To the contrary, RP appears content to let Diamondback expend its resources to protect the interests that both Diamondback and RP have (or purport to have) in the '035 Patent.[1] RP and its sophisticated IP counsel apparently recognize that Diamondback has the right to sue infringers in its own name.

By contrast, RP and Diamondback do *not* agree about the scope of RP's "exclusive" rights. Diamondback agrees and acknowledges that RP has the right to exclude third parties, including Kingdom, from selling patented setting tools, because, in the absence of a license from the patent owner, such sales would infringe the '035 Patent. However, RP has no right to exclude Diamondback from selling its patented setting tools, because the license grant, as limited by the definition of "Licensed Products," expressly states that RP only has the right to exclude others from selling tools "which would, but for [the Patent License], infringe a Valid Claim" of the '035 Patent.

The License Grant of Section 2 is not an exclusive grant of "all rights in and to the patent"

---

[1] Diamondback maintains that the Patent License is void and/or has been terminated due to RP's material and incurable breaches. In that case, RP has no interest in the '035 Patent. Nevertheless, for purposes of this Motion, Diamondback will assume the Patent License is valid and enforceable, even as the parties debate its proper interpretation. Even if the Patent License has not been terminated, Diamondback maintains that it retained the right to practice its own inventions under the terms of the Patent License. Finally, even if the Waco Court's interpretation of the license, whereby Diamondback retained no right to practice its own inventions, were accurate (it is not), Diamondback would still have a right to practice the patented inventions because, at a minimum, it has an implied license and because RP is estopped from claiming otherwise and/or has waived its rights to exclude Diamondback or acquiesced to Diamondback's continued sales of the patented setting tools. Diamondback reserves all rights with respect to such defenses and fully expects to prevail at the Waco Trial on one or more of those theories.

---

or an exclusive grant of "all rights to practice the patented inventions." Rather, the exclusive rights

(as used in the license)granted to RP are limited to specifically defined "Licensed Products." Pf's

Appx.34.

Section 1 of the original Patent License Agreement defined "Licensed Products" as

follows:

> **"Licensed Products"** means a bridge plug that is coupled with the Company or its
> Affiliates' solution tool used for well completions and any other **products** that may
> be agreed upon in writing by Licensor and Licensee from time to time, **the
> manufacture, use, offer for sale, sale, or importation of which would, but for
> this Agreement,** *infringe* **a valid Claim** in a jurisdiction in the Territory where
> such a Valid Claim exists.

(emphasis added). Pf's Appx. 33. About ten weeks later, that definition was replaced by an

amended definition in the Amendment:

> **"Licensed Products"** means [i] an electric wireline setting tool used for well
> completions and any other **products** that may be agreed upon in writing by
> Licensor and Licensee from time to time, [ii] **the manufacture, use, offer for sale,
> sale, or importation of [iii] which would, but for this Agreement,** *infringe* **a
> Valid Claim** in a jurisdiction in the Territory where such a Valid Claim exists.

(emphasis added). Pf's Appx. 49. Both definitions include an identical clause that modifies and

limits the scope of the described products: "the manufacture, use, offer for sale, sale, or importation

of which would, but for this Agreement, *infringe* a Valid Claim" (emphasis added). As shown

below in chart form, RP can only exclude Diamondback from selling its setting tools if those tools

satisfy all three conditions from the definition of Licensed Products:

|       | Condition                                                                                                                                                  | Yes | No |
|-------|------------------------------------------------------------------------------------------------------------------------------------------------------------|-----|----|
| (i)   | Is Diamondback's tool "an electric wireline setting tool used for well completions"?                                                                        | X   |    |
| (ii)  | Does Diamondback "manufacture, use, offer for sale, sell, or import" such tools?                                                                            | X   |    |
| (iii) | But for the Agreement (i.e., in the absence of the Patent License), would Diamondback's manufacture or sale of such products *infringe* a claim of the '035 Patent? |     | X  |

*See* Garner Dec. at ¶¶ 6-11, Pf's Appx. 56-58.

**B.    Procedural History**

Diamondback is simultaneously involved in two related litigations: this suit ("Fort Worth Suit") and one pending in Waco ("Waco Suit").

1.    Fort Worth Suit

During discovery, Diamondback learned Kingdom was competing against Diamondback by selling a disposable setting tool that infringes Diamondback's U.S. Patent No. 9,810,035 (the "'035 Patent"). Diamondback also learned that Kingdom designed its infringing tool based on schematics stolen by the Bakers shortly before they were terminated by Diamondback, and that the Bakers had removed copyright management information from the schematics before sharing them with design professionals and prospective business partners. Accordingly, in its First Amended Complaint, Diamondback added claims for (1) infringement of its '035 Patent, and (2) violations of the Digital Millennium Copyright Act ("DMCA"). Kingdom seeks to dismiss both claims by way of its Motion.

2.    Waco Suit

Diamondback has litigated and continues to litigate a similar, though not identical, issue in Waco, where Diamondback is the plaintiff on various claims (including breach of the Patent License) and the defendant on a claim by RP in which RP alleges that Diamondback is infringing its own '035 Patent. *See Diamondback Industries, Inc. v. Repeat Precision, LLC et al.*, Case No. 6:19-cv-00034-ADA (W.D. Tex.) (hereafter, "Waco Suit").

On June 5, 2019, Diamondback filed a Motion to Dismiss RP's Patent Infringement Claim for Lack of Subject Matter Jurisdiction, explaining that RP lacked constitutional and prudential standing because Diamondback had retained "substantial rights" in and to the '035 Patent,

including the right to sue alleged infringers and the right to practice its own inventions. Waco Suit, Dkt. 62 (Pf's Appx 5-30). Diamondback emphasized that a proper analysis of the Patent License required a careful reading of the license grant (Section 2) and, in particular, the defined term "Licensed Products" and its use of the word "infringe." In support, Diamondback attached the expert report of Professor Bryan Garner, a noted grammarian, legal lexicographer, and Editor-in-Chief of *Black's Law Dictionary. See* Pf's Appx. 053-60.

On June 27, 2019, RP filed a response arguing that the disputed license language is "unambiguous," while simultaneously arguing that "infringe a Valid Claim" does not *really* mean "infringe a Valid Claim" but, rather, should be interpreted to mean "the practice of inventions claimed"( Pf's Appx. 127, 218-221) or "the product contains each and every limitation of a claim." Waco Suit, Dkt 71 at 13-14. In so doing, RP made no distinction between the *authorized* practice of a patented invention and the *unauthorized* practice of a patented invention. RP did not present or attach any evidence from anyone who had actually read the license in question. Instead, RP attached a half dozen form licenses (none of which were executed) and a treatise to suggest that some (unnamed and unidentified) patent practitioners have used similar language to grant "exclusive" rights. RP did not present any evidence from any patent licensing professional or practitioner to opine that the actual language used in this Patent License would actually constitute an "exclusive license" – even to the exclusion of the patent owner.

On July 22, 2019, Diamondback filed a reply brief. Pf's Appx.124-136. Diamondback also filed a motion for leave to supplement the evidentiary record, showing that neither party ever intended to exclude Diamondback from practicing its own inventions. Dkt. 85-1.

On August 22, 2019, the Court held a hearing, and the parties presented oral argument. Diamondback also made a power point presentation to present a visual of some of the arguments.

Pf's Appx. 211-234. And on September 11, 2019, the Court entered an order denying Diamondback's motion. Waco Suit, Dkt. 89 (recently filed as a supplemental authority by Kingdom, as Dkt. 72) (hereafter, "Waco Order"). The Waco Order correctly notes that Diamondback is "the assignee and owner" of the '035 Patent (Order at 1) and was selling its patented setting tools before the Patent License was executed and has continued to do so after the Patent License was executed and after it was amended (Order at 1).

Otherwise, the Waco Order is deeply flawed and internally inconsistent in numerous respects. In particular, the Waco Order fails to deal with the single most important word in the dispute – "infringe" – as used in agreement's most important clause: products … the manufacture, use, offer for sale, sale, or importation of which would, but for this Agreement, *infringe* a Valid Claim …." The Court's ruling effectively rendered the Patent License's use of the word "infringe" a nullity. Dkt. 72, Waco Order at 7-8.

The Waco Court accused Diamondback (and, by extension, Professor Garner) of engaging in "extreme grammatical gymnastics." Waco Order at 7. In fact, Diamondback is doing the exact opposite, by requesting a careful, grammatically sound analysis and textually grounded interpretation of the unambiguous language used in the Patent License. This Court should construe the Patent License and affirm that Diamondback did not grant to RP the right to exclude Diamondback, as the patent owner, from making or selling its patented tools. "District courts are not bound to follow horizontal stare decisis, even from within the same district." *Sw. Bell Tel., L.P. v. Arthur Collins, Inc.*, No. 3:04-CV-0669-B, 2005 U.S. Dist. LEXIS 46874, 2005 WL 6225305, at *5 (N.D. Tex. Oct. 14, 2005).

## III.   DIAMONDBACK'S DMCA CLAIM CANNOT BE DISMISSED

Defendants' sole argument with respect to Diamondback's DMCA claim is that

Diamondback does not have a registered copyright. As shown below, a copyright registration is not required for a DMCA cause of action. Defendants' motion to dismiss Diamondback's DMCA action must therefore fail.

### A.   Applicable Law

#### 1.   12(b)(6)

Diamondback does not dispute Kingdom's recitation of the standard for evaluating a Rule 12(b)(6) motion to dismiss as set forth by Defendants.

#### 2.   17 U.S.C. § 101, *et seq.*

The Copyright Act sets forth all of the essential statutory provisions attendant to Diamondback's DMCA claim. Section 102 defines the subject matter of copyright, which states "[c]opyright protection *subsists*, in accordance with this title, in original works of authorship fixed in any tangible medium of expression," and includes "pictorial, graphic, and sculptural works," 17 U.S.C. § 102(a)(5) (emphasis added). The Copyright Act then defines the "Exclusive Rights in Copyrighted Works," in section 106:

> ...the owner of copyright under this title has the *exclusive rights to do and to authorize* any of the following:
>
> (1)   To reproduce the copyrighted work in copies or phonorecords;
> (2)   To prepare derivative works based upon the copyrighted work;
> (3)   To distributed copies or phonorecords of the copyrighted work to the public by sale or other transfer of ownership, or by rental, lease, or lending....

17 U.S.C. § 106 (emphasis added).

After defining the types of subject matter for which copyright protection subsists, and the rights of the owner of copyrighted material, the Copyright Act then defines an "infringer" of a copyright:

> (a) ***Anyone who violates any of the exclusive rights of the copyright owner as provided by sections 106*** through 122 or of the author as provided in section 106A(a), or who imports copies or phonorecords into the United States in violation

of section 602, *is an infringer* of the copyright or right of the author, as the case may be.

*Id.* § 501(a) (emphasis added).

Importantly, infringement is not defined as a lawsuit. Instead, an infringement is defined by the act of the infringer, and simply means that someone has violated one of the copyright owner's exclusive rights. Section 501(b) then makes clear that the right to bring an action for copyright infringement against an infringer is separate from the *existence* of an infringer:

> (b) the legal or beneficial owner of an exclusive right under a copyright is entitled, *subject to the requirements of section 411*, to institute an action for any infringement of that particular right committed while he or she is the owner of it.

*Id.* § 501(b), (emphasis added). In other words, the law distinguishes between infringement and *actionable* infringement. Infringement is not actionable if the copyright owner has not satisfied the registration requirement of Section 411 - a fact that Diamondback does not dispute.

Section 411 provides that "no civil action for infringement of the copyright in any United States work shall be instituted until preregistration or registration of the copyright claim has been made...." *Id.* § 411(a). However, Section 408, titled "Registration Permissive," further provides, in relevant part, that "during the *subsistence of any copyright* secured on or after [January 1, 1978], the owner of *copyright or any exclusive right in the work may* obtain registration of the copyright claim...." *Id.* § 408(a) (emphasis added).

Finally, the statute that provides the basis for Diamondback's DMCA claim, 17 U.S.C. § 1202(b), makes no mention of "actionable" copyright infringement and makes no mention of a registration requirement:

> (b) Removal or alteration of copyright management information.—No person shall, without the authority of the copyright owner or the law—
>
> (1) intentionally remove or alter any copyright management information, ...or,
>
> (3) distribute...works, copies of works, or phonorecords, knowing that copyright management information has been removed or altered without authority

---

of the copyright owner or the law,

> Knowing, or, with respect to civil remedies under section 1203, having reasonable grounds to know, that it will induce, enable, facilitate, or conceal ***an infringement of any right under this title.***"

*Id.* § 1202(b) (emphasis added).

These statutory provisions, taken together, conclusively establish each of the following:

(1) a copyright exists at the time an author fixes an original work in a tangible medium of expression;

(2) certain exclusive rights are vested in the owner of a copyright at the time a work is created, including the right to prevent others from copying, distributing, and creating derivative works from the copyrighted work;

(3) infringement is different than actionable infringement. Anyone who violates one of the enumerated exclusive rights in 17 U.S.C. § 106 *is* an infringer, regardless of whether the copyright owner has registered the copyrighted work under 17 U.S.C. § 411, and therefore has met the prerequisite for bringing an infringement action against the infringer; and

(4) the DMCA requires neither registration nor actionable infringement. An action under the DMCA exists separate and apart from the registration required for a copyright infringement action.

**B.      Argument: the DMCA claim is proper because no copyright registration is required.**

In section III.A.2, *supra*, the word *subsists* is a word of particular import as it relates to Diamondback's DMCA claim. "Subsist" means "to exist." The Am. Herit. Collegiate Dictionary, p. 1213 (2nd Coll. Ed. 1985 (Pf's Appx. 235-237). According to 17 U.S.C. § 102, what "subsists"

in original works of authorship fixed in any tangible medium is "copyright protection." 17 U.S.C. § 102(a).

It follows, therefore, that Diamondback's engineering drawings that are the subject of the DMCA action are copyrighted works—a fact that Defendants do not dispute in their Motion to Dismiss. Defendants' entire argument is based on the lack of registration of a copyright in the work, and that a portion of Diamondback's proprietary legend, which states "Copyright Diamondback Industries Inc. 2009," is not accurate. Both of these arguments fail.

Several courts have considered whether copyright registration is required for an action under the DMCA. With one exception, which is inapposite to the facts of this case, these courts have determined that no registration is required. "While a copyright registration is a prerequisite under 17 U.S.C. § 411(a) for an action for copyright infringement, claims under the DMCA, however, are simply not copyright infringement claims and are separate and distinct from the latter." *Med. Broadcasting Co. v. Flaiz*, No. Civ.A. 02-8554, 2003 U.S. Dist. LEXIS 22184, 2003 WL 22838094, at *3 (E.D. Pa. Nov. 25, 2003) (Bartle, J.). In *Playboy Enters. Int'l Inc. v. Mediatakeout.com LLC*, the defendant made the very argument Defendants attempt in this case. There, the court held that "plaintiff's failure to register its copyrighted work is not a bar to a DMCA action." No. 15 CIV. 7053 (PAE), 2016 U.S. Dist. LEXIS 29249, 2016 WL 1023321, at *5 (S.D.N.Y. Mar. 8, 2016) (Engelmayer, J.)

The only case in which a DMCA action was dismissed based on a registration was *Thron v. HarperCollins Publishers, Inc.*, No. 01 Civ. 5437 (JSR), 2002 U.S. Dist. LEXIS 13670, 2002 WL 1733640 (S.D.N.Y. July 26, 2002) (Rakoff, J.). In that case, the copyright registration was invalid, so removal of the copyright notice from the copyrighted photographs did not constitute removal of "copyright management information." The case in *Thron* is completely distinguishable

from the instant facts. In this case, the Defendants removed each of the title, date, and author's information from Diamondback's drawings. The precise information that the statute prohibits a party from removing is the very information that Defendants removed. *See* 17 U.S.C. § 1202(c) (defining copyright management information to include, *inter alia*, "(1) the title and other information identifying the work..., (2) the name of, and other identifying information about, the author of a work[,] and (3) the name of, and other identifying information about, the copyright owner of the work....").

Diamondback does not dispute that it has not registered its engineering drawings, which constitute trade secrets that Diamondback seeks to protect. However, the failure to register an original work neither deprives the owner of the work of copyright protection, nor does it preclude the owner from bringing an action under the DMCA, because no such registration is required. *See Gattoni v. Tibi_LLC*, 254 F. Supp. 3d 659, 663-64 (S.D.N.Y. 2017) (citing *Playboy*, 2016 WL 102331, at *5); *see also I.M.S. Inquiry Mgmt. Sys., Ltd. v. Berkshire Info. Sys., Inc.*, 307 F. Supp. 2d 521, 531 n.9 (S.D.N.Y. 2004) ("[P]laintiff's failure to register its copyrighted work is not a bar to a DMCA action.").

Finally, Defendants' assertion that the only reference to a copyright is that the "copyright management information ('CMI') [*sic*] claims a registered copyright date of 2009." Motion to Dismiss, at 10. As shown above, no such registration exists, so Defendants' assertion is in error. Whether Diamondback claims copyright as of 2009 for the format of its engineering drawings, or that the information put on the form is subject to copyright protection, is not at issue. The CMI removed includes the title, author, owner, and date of creation, as clearly listed on the *unaltered* Diamondback drawings:



*See* First Amended Complaint, p. 8 (Dkt. 65) (the figure above is an annotated version of the legend produced in the First Amended Complaint). Thus, regardless of what meaning, if any, the Court ascribes to the "Copyright Diamondback Industries Inc. 2009" reference in the legend, there is no dispute that Defendants removed the title, author, date of the work, owner of the work, and other identifying information about the work. Diamondback's claim under the DMCA alleges that this information was intentionally removed to conceal Defendants' infringement of Diamondback's unregistered copyright, and therefore must remain in the case.

## IV.   DIAMONDBACK'S PATENT INFRINGEMENT CLAIM SHOULD NOT BE DISMISSED

### A.   Applicable Law

1.     Fed. R. Civ. P. 12(b)(7) and 19(a)(1)(B)(ii)

Kingdom, as movant, accurately notes that the "movant bears the initial burden of demonstrating that an absent entity is a required party. Motion at 4. If "defendant has failed to carry its burden to show that [the absent party] is a necessary party under Rule 19(a)(1) [then] defendant's motion to dismiss pursuant to Rule 12(b)(7) must be denied." *See Harris v. Utopia Fitness, Inc.*, No. 4:13-CV-574-A, 2013 U.S. Dist. LEXIS 143387, at *6 (N.D. Tex. Oct. 3, 2013).

.

Rule 19(a)(1) presents a number of options to demonstrate that an absent person is a required party. Here, Kingdom relies exclusively on Fed. R. Civ. P. 19(a)(1)(B)(ii) and must therefore demonstrate that it will be "subject to a substantial risk of incurring double [or] multiple … obligations" (Fed. R. Civ. P. 19(a)(1)(B)(ii)) or "adequately explain how [it] will be 'left with a substantial risk of inconsistent obligations'" because of the alleged interest of an absent person. *See Inspirus, L.L.C. v. Egan*, No. 4:11-CV-417-A, 2011 U.S. Dist. LEXIS 146054, at *11-13 (N.D. Tex. Dec. 20, 2011) (denying motion to dismiss, holding that movant failed to meet his burden, and stating: "How … Egan will be left with a substantial risk of inconsistent obligations is a puzzle to the court …."). Where the movant "has failed to carry his burden to show that [the absent person] is a party who should be joined if feasible under Rule 19(a) …, no further inquiry under Rule 19(b) is required." *Id.* at *13.

    2.    Patent ownership and the "all substantial rights" doctrine

"The essential issue regarding the right to sue on a patent is who owns the patent." *Aspex Eyewear, Inc. v. Miracle Optics, Inc.*, 434 F.3d 1336, 1341 (Fed. Cir. 2006), citing *Waterman v. MacKenzie*, 138 U.S. 252, 255-56 (1891). To sue for patent infringement in that party's own name, the plaintiff must have standing, which requires that the party have, in effect, an assignment of the patent:

> The right to sue for infringement is ordinarily an incident of legal title to the patent. … [T]he critical determination regarding a party's ability to sue in its own name is whether an agreement transferring patent rights to that party is, in effect, an assignment or a mere license. To determine whether an assignment of patent rights was made, we must "examine whether the agreement transferred all substantial rights" to the patents and "whether the surrounding circumstances indicated an intent to do so."

*AsymmetRx, Inc. v. Biocare Med., LLC*, 582 F.3d 1314, 1319 (Fed. Cir. 2009) (citations omitted). Here, Diamondback is still the owner and assignee of the patent and, even after executing the

Patent License, retains substantial rights in and to the patent. *See Mentor H/S, Inc. v. Medical Device Alliance, Inc.*, 240 F.3d 1016, 1018 (Fed. Cir. 2001) ("[Patent Owner] has the first obligation to sue parties for infringement …. [Exclusive Licensee] only can sue for infringement in the event [Patent Owner] fails to do so. …. Here, in light of [Patent Owner's] substantial retained rights, particularly its initial right and obligation to sue for infringement, we conclude that [Exclusive Licensee] did not receive all substantial rights in the patent."); *Alfred E. Mann Found. for Sci. Research v. Cochlear Corp.*, 604 F.3d 1354, 1359-60 (Fed. Cir. 2010) (where "the licensor did not transfer 'all substantial rights' to the exclusive licensee, … the licensor remains the owner of the patent and retains the right to sue for infringement" and "the owner of the patent for standing purposes … gains the right to sue on its own"). See also Pf's Appx.17-28

        3.     "exclusive licensee"

The term "exclusive licensee" is often used imprecisely, as Kingdom does in its Motion. Total exclusivity – to the exclusion of everyone, including the licensor – is easily achieved with language that grants "all rights in and to the patents" or "all rights to make, use, and sell the patented inventions." *See, e.g., Indep. Wireless Tel. Co. v. Radio Corp. of Am.*, 269 U.S. 459, 461, 469 (1926) (Licensor "gave an exclusive license to make, use and sell the [patented] devices for the life of the patents") (describing "the owner of a patent who grants to another the *exclusive right to make, use or vend the invention*") (emphasis added); *Waterman v. MacKenzie*, 138 U.S. 252, 255-56 (1891) (holding that a transfer of patent rights, which included the "exclusive right to make, use, and sell … *the patented machines* [or the] *patented articles*," was effectively an assignment) (emphasis added). But that is not what happened in this Patent License. Rather, the license grant here is limited by the definition of Licensed Products, which is, in turn, limited to products that would, in the absence of the Patent License, infringe the '035 Patent.

**B.    Kingdom has failed to meet its initial burden to show that RP is a required party**

1.    Kingdom has not demonstrated that RP's absence creates a "substantial risk"

To shift the burden to Diamondback, Kingdom must demonstrate that RP's absence from this litigation would subject Kingdom to "a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of" RP's alleged "interest relating to the subject of the action." *See* Fed. R. Civ. P. 19(a)(1)(B)(ii). A "possible" or "hypothetical" risk is not sufficient. *Id.*

Here, Kingdom's proffer is limited to a single sentence: "failing to join R-P would subject Defendants to the risk of being subject to multiple patent infringement lawsuits because R-P also retains a right to sue under the '035 Patent License." Motion at 7-8. Kingdom ignores Section 6.2 of the Patent License, which establishes that Repeat Precision's right to sue only vests if Diamondback declines to sue (Pf's Appx. 37) – an impossibility, now that Diamondback has, in fact, sued Kingdom. Kingdom does not otherwise describe, articulate, or even hypothesize about any other conceivable scenario in which RP's absence from this lawsuit could subject Kingdom to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations. Kingdom's theories in this regard are a mystery. *See Inspirus, L.L.C. v. Egan*, No. 4:11-CV-417-A, 2011 U.S. Dist. LEXIS 146054, at *11-13 (N.D. Tex. Dec. 20, 2011) ("How … Egan will be left with a substantial risk of inconsistent obligations is a puzzle.").

In fact, the only "necessary party" to this infringement action is Diamondback. Kingdom's motion should be denied.  Alternatively, should this Court determine that an additional party should be joined,  the application of Rule 19 is mandatory, not discretionary. *Lone Star Silicon*

*Innovations LLC v. Nanya Tech. Corp.*, 925 F.3d 1225, 1238 (Fed. Cir. 2019) ("[T]he district court declined to join AMD because it thought doing so 'would reward Lone Star' for a 'litigation gimmick' and prejudice Appellees. ... But the application of Rule 19 is mandatory, not discretionary."); *see also* 7 Charles Alan Wright et al., Federal Practice and Procedure § 1611 (3d ed. 2019) ("[T]he non-joinder of someone described in Rule 19(a) does not result in a dismissal if that person can be made a party to the action.").

> 2.     As the sole owner of the '035 Patent, Diamondback may sue in its own name

Diamondback retained the right to sue alleged infringers of the '035 Patent:

> **Licensor may, at its sole option, choose to bring suit to stop infringement of the Licensed Patent** or defend a declaratory judgment action or other proceeding alleging noninfringement, invalidity, or unenforceability of the License Patent. If Licensor elects not to bring such suit or assert such defense within one month of such notice, then Licensee may bring such suit or assert such defense and may join Licensor in the proceeding as necessary. **The party bringing such suit** or asserting such defense **may control the conduct of the prosecution** or defense **of any proceeding under this section, including settlement**, and the other party will provide assistance as necessary with reasonable out-of-pocket expenses to be timely reimbursed by the party controlling such proceeding. Licensee must obtain prior approval from Licensor of any settlement terms for other than monetary damages paid to Licensee.

§ 6.2 (emphasis added).  Pf's Appx.37.

Under this language, Diamondback retained the unfettered right to sue infringers, to control the litigation, to control settlement, and to recover all infringement damages. *See, e.g., Mann Foundation*, 604 F.3d at 1362 (explaining that once the "right to sue an infringer activates, [Licensor] can decide whether or not to bring suit, when to bring suit, where to bring suit, what claims to assert, what damages to seek, whether to seek injunctive relief, whether to settle the litigation, ... the terms on which the litigation will be settled ... [and has] complete discretion to decide what trial strategy and tactics to employ" – "broad right[s that are] thoroughly inconsistent

with an assignment of the patents-in-suit to [Licensee]"). RP's contingent right to sue does not

vest unless and until Diamondback chooses not to sue. Under the present circumstances, where

Diamondback has chosen to sue the infringer (i.e., Kingdom), RP's contingent right to sue will

never vest. As such, there is no risk to Kingdom, let alone a substantial risk, that it will be sued by

RP.

Clearly, Diamondback is the owner of the '035 Patent. And its transfer of rights in the

Patent License was not an assignment. "[T]ransfer of the exclusive right to make, use, and sell

products or services under the patent is vitally important to an assignment" .... *Alfred E. Mann*

*Found. for Sci. Research v. Cochlear Corp.*, 604 F.3d 1354, 1360 (Fed. Cir. 2010). "Where the

licensor retains a right to sue accused infringers, that right often precludes a finding that all

substantial rights were transferred to the licensee. ... Under the prior decisions of this court, the

nature and scope of the licensor's retained right to sue accused infringers is the most important

factor in determining whether an exclusive license transfers sufficient rights to render the licensee

the owner of the patent." *Id.* at 1361.

3.     RP is not an "exclusive licensee" in the sense of total exclusion

Kingdom's only effort to meet its burden is to repeat the mantra that "exclusive licensees"

must be joined. Kingdom does not explain why that is the case, and Kingdom does not mention

that this is a "general" rule: "When there is an exclusive license agreement, but the exclusive

license does not transfer sufficient rights to make the licensee the equivalent of the patent owner,

either the licensee or the licensor may sue, but both of them ***generally*** must be joined as parties to

the litigation. *New World Int'l, Inc. v. Ford Glob. Techs., LLC*, No. 3:16-CV-1112-M, 2017 U.S.

Dist. LEXIS 41067, at *24 (N.D. Tex. Mar. 22, 2017) (emphasis added). Here, RP is *not* an

"exclusive licensee" in the absolute sense that it can exclude all parties, including the patent owner,

from practicing the licensed patents or from making or selling the patented invention. And, as described above, there is not a "substantial risk" to Kingdom under these circumstances.

## V.    CONCLUSION

The Motion should be denied. Alternatively, the Court should grant leave to amend. *See* Fed. R. Civ. 15(a)(2) ("The court should freely give leave when justice so requires.").

Dated: September 27, 2019

Respectfully submitted,

Decker A. Cammack (Lead Counsel)
Texas Bar No. 24036311
dcammack@whitakerchalk.com

David A. Skeels
Texas Bar No. 24041925
dskeels@whitakerchalk.com

**WHITAKER CHALK SWINDLE
   & SCHWARTZ PLLC**
301 Commerce Street, Suite 3500
Fort Worth, Texas 76102
Phone: (817) 878-0500
Fax: (817) 878-0501

*Counsel for Diamondback Industries, Inc.*

## CERTIFICATE OF SERVICE

I certify that on September 27, 2019, I served the foregoing document on all counsel of record via the Court's ECF system and /or via email.

Decker A. Cammack

DM#421853v3